**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 35**

Docket No. SF-0752-15-0877-I-1

**William T. Thomas, IV,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

October 20, 2022

<u>William T. Thomas, IV</u>, Marina, California, pro se.

<u>Andrea Campanile</u>, Esquire, Monterey, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 14-day suspension and a demotion to a nonsupervisory position.  For the reasons discussed below, we GRANT the agency's petition for review, MODIFY the analysis of the first specification, VACATE and REVERSE the initial decision with respect to the penalty, and SUSTAIN the agency's removal action.

## BACKGROUND

¶2      On September 18, 2015, the agency issued a decision removing the appellant from his position as a GS-9 Supervisory Human Resources Specialist based on the charge of conduct unbecoming a supervisor, supported by two specifications.  Initial Appeal File (IAF), Tab 11 at 27-29, Tab 12 at 14-16.[1] The first specification alleged that, from February 2015 to August 6, 2015, the date of the proposal notice, the appellant's supervisor spoke to him "numerous times" about his behavior towards his female subordinate employees, and that it was reported to the appellant's supervisor that the appellant had made comments to the women that were unwanted and inappropriate, and told them that they were "sexy" or "beautiful," which made them uncomfortable.  IAF, Tab 11 at 27, Tab 12 at 14.  The second specification alleged that during the same timeframe, the appellant's supervisor spoke to him "numerous times" about the amount of time he spent in his office, with the door closed, with a particular female subordinate employee, reportedly engaging in conversations that were personal in nature, and that he, as a supervisor, should have recognized that his actions could be construed as favoritism and were disrupting his office.  IAF, Tab 11 at 27, Tab 12 at 14.

¶3      The appellant filed an appeal of his removal with the Board, and after holding a hearing, the administrative judge issued an initial decision sustaining the agency's charge, but mitigating the penalty.  IAF, Tab 33, Initial Decision (ID).  With respect to the first specification, the administrative judge found that the appellant made two female subordinates, E.M. and C.A., feel uncomfortable

---

[1] The appellant elected to retire after the agency issued its decision to remove him, but before the effective date of the removal.  IAF, Tab 11 at 25, 27; Hearing Recording (testimony of the appellant).  In accordance with 5 U.S.C. § 7701(j), an appellant who retires after receiving the agency's decision to remove him, but on or before the scheduled effective date of his removal, may still appeal his removal to the Board. *Mays v. Department of Transportation*, 27 F.3d 1577, 1578-81 (Fed. Cir. 1994).

by calling them "beautiful" on one occasion each, but she did not find that he called the women "sexy." ID at 6-8. Nevertheless, she found that the agency proved its first specification. ID at 8. The administrative judge then sustained the second specification in its entirety, finding that the appellant spent "an inordinate amount of time" in his office, with the door closed, with a female subordinate, and that his actions caused others to perceive that he favored this employee, and created a disruption in the workplace because he was often unavailable to assist others. ID at 10. The administrative judge also found that the agency established a nexus between the appellant's misconduct and the efficiency of the service. ID at 18.

¶4    Then, the administrative judge reviewed the agency's penalty determination. ID at 18-21. First, she found that "[a]lthough serious . . . the [appellant's] misconduct [did] not involve more serious charges such as sexual harassment, making sexual advances, or inappropriate conduct towards [the female subordinate employee] during closed-door meetings." ID at 20. Next, while she acknowledged that the appellant's record of prior discipline was an aggravating factor and that the agency was entitled to hold the appellant, as a supervisor, to a higher standard of conduct, the administrative judge found that there were several mitigating factors weighing in favor of the appellant, including his length of service and "good performance." *Id.* Additionally, the administrative judge credited the appellant's claims that he was suffering from stress and tension in the workplace due to his relationship with his supervisor, and that he was suffering from depression, although she explained that these were not particularly strong mitigating factors because the appellant had not explained how they were related to his misconduct. ID at 20-21. Finally, she concluded that removal exceeded the bounds of reasonableness, and that the maximum

reasonable penalty was a 14-day suspension and a demotion to a nonsupervisory position.[2]  ID at 21.

¶5    The agency has filed a petition for review, arguing, among other things, that the administrative judge trivialized the seriousness of the appellant's misconduct, and improperly substituted her own judgment for that of the deciding official in determining the reasonableness of the penalty.  Petition for Review (PFR) File, Tab 1 at 9-17.  The appellant filed an opposition to the agency's petition for review.  PFR File, Tab 3.

## ANALYSIS

The agency proved that the appellant's conduct towards his female subordinates was inappropriate and unwanted.

¶6    In finding that removal was an unreasonable penalty for the appellant, the administrative judge relied in part on a mischaracterization of the nature of his misconduct under the first specification of the agency's charge.  Specifically, the agency charged the appellant with conduct unbecoming a supervisor,[3] with its first specification alleging:

> Beginning in February 2015 through the present, [the appellant's supervisor] had to speak to [him] numerous times regarding [his] conduct towards [his] female subordinate employees.  It was reported

---

[2] The administrative judge also found that the appellant did not prove his affirmative defenses, concluding that he failed to establish his claims of disability discrimination, both a failure to reasonably accommodate claim and a status-based disability claim, as well as his claims of age discrimination, harmful procedural error, and due process violations.  ID at 11-18.  Neither party disputes these findings on review, and accordingly, we will not discuss these claims further.  The administrative judge also determined not to award the appellant interim relief under 5 U.S.C. § 7701(b)(2)(A) because of his status as an annuitant under the Federal Employees' Retirement System.  ID at 23.  Neither party raises this matter on review, and again we will not discuss it further.

[3] The administrative judge erred in stating that the agency charged the appellant with merely conduct unbecoming, ID at 3-10, when the agency had in fact charged the appellant with conduct unbecoming a supervisor, IAF, Tab 11 at 27, Tab 12 at 14.  Neither party raises this matter on review, so we will not address it further.

> to [the supervisor] that [the appellant was] making comments to females that were unwanted and inappropriate in the workplace. Even though [the appellant] may have believed that [he was] paying a compliment by telling [his] subordinate female employees that they were "sexy" or "beautiful," in fact, [he] made them feel uncomfortable. [The appellant's] conduct is unbecoming a supervisor.

IAF, Tab 12 at 14.

The administrative judge erroneously found that this specification alleged only that the appellant told his subordinate female employees that they were "sexy" or "beautiful" and made them feel uncomfortable. ID at 4. She sustained the specification, finding that he called his subordinate employees E.M. and C.A. "beautiful" on one occasion each, but that he had not called them "sexy." ID at 6-8. As a result of her narrow view of the first specification, when she reviewed the agency's penalty determination, concerning the nature and seriousness of the appellant's misconduct, she concluded that:

> [T]he appellant's sustained misconduct consisted of two incidents of telling female[] subordinates they were beautiful thereby making them uncomfortable, as well as failing to realize his meetings with E.M. in his office with the door closed would result in the perception of favoritism and disruption. Although serious . . . [his] misconduct does not involve more serious charges such as sexual harassment, making sexual advances, or inappropriate conduct during closed door meetings.

ID at 20.

¶7        The administrative judge erred in limiting the specification to two instances of the appellant calling female subordinates "beautiful," and in doing so, trivialized the severity of his behavior. In actuality, the appellant's misconduct, as charged by the agency, spanned several months and went well beyond two instances of calling E.M. and C.A. "beautiful," which the agency merely used as an example of the appellant's misconduct. The materials the agency relied upon when proposing removal, which were provided to the appellant and which he addressed in his response to the proposal notice, provide further details regarding

his misconduct. *See Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶ 8 (2004) (finding that for due process purposes, the issue is whether the notice of proposed removal, along with the supporting documentation contemporaneously provided to the appellant, afforded him sufficient notice of the charges against him to make a meaningful reply to the proposal). They consist of multiple employee statements setting forth numerous examples of his egregious behavior towards his female subordinates. IAF, Tabs 11-14. However, because the administrative judge took an inappropriately narrow view of the charge, she made no factual or credibility findings regarding these allegations. ID at 6-8. Thus, before we address the penalty, we must first address whether the agency proved that the appellant committed the conduct alleged in its first specification, i.e., whether from February 2015 through August 2015, he made unwanted and inappropriate comments in the workplace to his female subordinates. IAF, Tab 12 at 14.

¶8        An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The Board must defer to an administrative judge's credibility

determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). However, when an administrative judge's findings are not based on the observation of witnesses' demeanor, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues. *Id.* at 1302. Moreover, the Board may overturn an administrative judge's credibility determinations when they are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004).

¶9 The administrative judge made no findings regarding the first specification besides her finding that the appellant called E.M. and C.A. "beautiful." Because the record is sufficiently well-developed and we need not base our findings on witness demeanor, the Board will make its own credibility determinations as to the remaining portions of the first specification. *See Uske v. U.S. Postal Service*, 60 M.S.P.R. 544, 557 (1994), *aff'd*, 56 F.3d 1375 (Fed. Cir. 1995). In so doing, we note that several relevant witnesses provided written statements but did not testify at the hearing. As set forth below, we find that there is ample evidence supporting a finding that the agency proved its first specification in its entirety.

¶10 At the hearing, E.M. testified that the appellant behaved in an unprofessional and unacceptable manner towards her, constantly making inappropriate comments to her, such as commenting on what she was wearing, telling her she "looked nice," and telling her that she "should wear dresses more often because [she] has nice legs." Hearing Recording (HR) (testimony of E.M.). She further testified that the appellant would "leer" at her, and that one time she caught him "staring at [her] butt" while she was wearing a suit. *Id.* E.M. explained that she tried to get the appellant to stop his inappropriate behavior, telling him that he was going too far or that he crossed a line, but his behavior did not change. *Id.*

¶11    E.M. also testified that the appellant told her that he had feelings for her, which she interpreted as him expressing a sexual interest in her and wanting "to be with her." *Id.* In response to his expression of interest, E.M. told the appellant that he crossed a line and not to speak to her like that again. *Id.* She then went to her coworker, A.S., and told him that the appellant was "hitting on" her and making her feel uncomfortable. *Id.* Because of the appellant's behavior, E.M. stated that she would hide out in a coworker's office to avoid the appellant, hated coming to work, and felt like she was "battling" each day in the office. *Id.*

¶12    E.M.'s testimony is consistent with her previous written statement, IAF, Tab 13 at 5-7, as well as the contemporaneous statements of her coworkers. The record contains a statement from A.S. confirming that E.M. approached him in late February or early March 2015, "on the verge of tears," and told him that the appellant "had been making advances towards her and that his behavior was making her feel very uncomfortable." IAF, Tab 12 at 18-19. There is also a memorandum for the record dated June 24, 2015, from another coworker, T.L., stating that E.M. had approached him in mid-May 2015 seeking advice about "harassment issues" with the appellant, telling him that the appellant "was consistently hitting on her." IAF, Tab 13 at 9. C.S., another subordinate, stated that the appellant was often "flirtatious" in the office, and that she had warned him about his behavior, but he would just "laugh it off." IAF, Tab 26 at 11; HR (testimony of C.S.).

¶13    The appellant was also accused of behaving inappropriately with another female subordinate, C.A., who resigned from the agency in May 2015, citing numerous issues with the appellant, including that he had "gone out of his way to call attention to [her]," when she was talking with a coworker, by telling her "how nice [she] looked that day." IAF, Tab 13 at 12-13. C.A. did not testify at the hearing, but another employee, P.Y., confirmed in his testimony that the appellant told C.A. in P.Y.'s office that she was "beautiful" or "pretty," "like an angel." HR (testimony of P.Y.). In fact, P.Y. was so concerned about the

appellant's comments that he suggested that the appellant follow up with C.A. to make sure she was not upset, and reported the comments to the appellant's supervisor. *Id.* P.Y's testimony is consistent with the remaining record. The agency file contains a memorandum for the record written by the appellant's supervisor dated March 20, 2015, stating that on that date, an employee reported to him that the appellant was making inappropriate and unwanted comments to C.A., including that he called her "beautiful."[4] IAF, Tab 14 at 7. C.A. told the appellant's supervisor that the appellant's behavior toward her was inappropriate and made her feel uncomfortable. *Id.*

¶14    The appellant denies the allegations, claiming that he never engaged in inappropriate conduct, but instead some of his comments, like referring to employees looking "nice," were misconstrued. HR (testimony of the appellant); IAF, Tab 12 at 5. He also claims that E.M. was a problem employee and fabricated the allegations against him, and that his supervisor had "ill will" toward him, which resulted in this removal action. HR (testimony of the appellant); IAF, Tab 11 at 31-40.

¶15    Assessing the conflicting evidence in light of the *Hillen* factors, we find that the statements and testimony provided by the agency's witnesses were consistent with each other and not inherently improbable. The testimony and statement of E.M., the testimony of P.Y., and the statement of C.A. were based on their direct observations of the appellant's behavior. The statements of E.L., A.S., and the appellant's supervisor were based on their observations when meeting with E.M. and C.A. and contemporaneous reports by E.M. and C.A. about the appellant's inappropriate behavior. While the appellant suggests that the reason for the statements and testimony of E.M. and his supervisor may have

---

[4] The memorandum also alleged that the appellant told C.A. "that her toes were sexy or pretty, or something to that effect," however, there was no testimony at the hearing regarding this statement. IAF, Tab 14 at 7.

been that they were biased against him, the weight of the evidence suggests otherwise. Further, there is no indication the remaining agency witnesses were biased against the appellant. Thus, we find the agency's witnesses to be more credible than the appellant concerning the allegations in the first specification that the appellant engaged in numerous acts of inappropriate and unwanted behavior towards his female subordinate employees from February through August 2015.

¶16     Our findings are consistent with the limited credibility findings made by the administrative judge who, based on her observation of E.M.'s demeanor at the hearing, credited E.M.'s testimony when finding that the appellant had called her "beautiful," finding that her testimony was consistent with her previous written statement and her conversations with A.S., and that her testimony was straightforward and detailed. ID at 6. Similarly, the administrative judge credited P.Y.'s testimony to find that the appellant had referred to C.A. as "beautiful," finding that there was no appearance of bias against the appellant or any motive to fabricate the event. ID at 7. Accordingly, we find that the agency proved the full scope of the conduct alleged in its first specification. IAF, Tab 12 at 14.

Removal was within the bounds of reasonableness in light of the seriousness of the appellant's misconduct in relation to his duties as a Supervisory Human Resources Specialist.

¶17     Generally, in an adverse action appeal taken under chapter 75, the agency must prove its charge by preponderant evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty imposed was within the tolerable bounds of reasonableness. *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012). In this matter, we have found that the charge, including both specifications, has been proven. The administrative judge determined that nexus existed, and neither party has challenged that finding on

petition for review. Therefore, we must now determine the propriety of the penalty.

¶18      In assessing the reasonableness of the penalty, the Board will consider a nonexhaustive list of factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). Those factors are: (1) the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others. *Douglas*, 5 M.S.P.R. at 305–06. Not every factor is relevant in every case. *Chavez v. Small Business Administration*, 121 M.S.P.R. 168, ¶ 9 (2014) (finding that a deciding official does not have to consider each of the *Douglas* factors in making his penalty determination);

*Hooper v. Department of the Interior*, 120 M.S.P.R. 658, ¶ 10 (2014); *Wentz v. U.S. Postal Service*, 91 M.S.P.R. 176, ¶ 14 (2002).

¶19        When all of the agency's charges are sustained, as they are here, the Board will review the agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors or the penalty clearly exceeds the bounds of reasonableness. *Id.*; *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 20 (2001).

¶20        It is well established that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶ 9 (2013); *Kirkland-Zuck v. Department of Housing & Urban Development*, 90 M.S.P.R. 12, ¶ 19 (2001), *aff'd*, 48 F. App'x 749 (Fed. Cir. 2002). Here, we agree with the agency that the administrative judge failed to recognize the seriousness of the appellant's misconduct. PFR File, Tab 1 at 9-10. The appellant's behavior was inappropriate and divisive, made his subordinates uncomfortable, and poisoned the working environment. IAF, Tab 12 at 18-19, Tab 13 at 5-7, 12-14, 16-17, Tab 14 at 7, Tab 26 at 11-12; HR (testimony of E.S., testimony of C.S., testimony of P.Y., testimony of the appellant's supervisor). E.M. explained the effect of his actions on her emotional and mental well-being, stating that she "hated coming into work because [she] felt it was hostile," and went so far as to hide in a coworker's office simply to avoid the appellant. IAF,

Tab 13 at 7; HR (testimony of E.M.).  The other target of the appellant's conduct, C.A., resigned, citing a multitude of issues with the appellant.  IAF, Tab 13 at 12-13.

¶21     The seriousness of the appellant's misconduct is amplified by his role as a supervisor.  It is well settled that, because supervisors occupy positions of trust and responsibility within an agency, the agency has a right to expect a higher standard of conduct from them.  *Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010); *Gebhardt v. Department of the Air Force*, 99 M.S.P.R. 49, ¶ 21 (2005), *aff'd*, 180 F. App'x. 951 (Fed. Cir. 2006).  It is particularly noteworthy that the appellant directed his inappropriate comments towards his subordinates, over whom he possessed supervisory power, thus violating the authority the agency vested in him as a supervisor.

¶22     Furthermore, while the appellant's misconduct would be serious in any context, when considered in the context of the appellant's position as a Supervisory Human Resources Specialist, we find his misconduct to be exceptionally serious.  The importance of a healthy and effective human resources department for an agency cannot be overstated.  The Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 3, 92 Stat. 1111 (1978), states: "[I]n order to provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service, Federal personnel management should be implemented consistent with merit principles and free from prohibited personnel practices."  Human resources employees, such as the appellant, play crucial roles in maintaining the quality of public service, because it is the responsibility of the human resources component of an agency "to retain Governmentwide approaches, authorities, entitlements, and requirements" in areas including "[a]ccountability for adherence to merit system principles" and "[e]mployee protection from prohibited personnel practices."  Office of Personnel Management, *Human Resources Flexibilities and Authorities in the Federal Government*, 3, 10 (August 2013),

https://www.opm.gov/policy-data-oversight/pay-leave/reference-materials/handbooks/humanresourcesflexibilitiesauthorities.pdf. An effective human resources component is "vital to the health of the Federal civil service." Merit Systems Protection Board, Research Brief, *The State of the Federal HR Workforce: Changes and Challenges*, 1 (May 2020), https://www.mspb.gov/studies/publications/State_of_the_Federal_HR_Workforce_Changes_and_Challenges.pdf.

¶23    The appellant's misconduct is antithetical to his responsibilities as a Supervisory Human Resources Specialist and strikes at the very core of his job duties to assist in protecting the merit systems principles and prevent prohibited personnel practices. In addition, his inappropriate behavior toward female subordinates perpetuated a working environment that was detrimental to his staff, and hindered his department's ability to perform its functions. IAF, Tab 12 at 18-19, Tab 13 at 5-7, 12-14, 16-17, Tab 14 at 7, Tab 26 at 11-12; HR (testimony of E.M., testimony of C.S., testimony of P.Y., testimony of the appellant's supervisor). Thus, the appellant's misconduct is contrary to the entire purpose of the department he was hired to serve and was exceptionally serious.

¶24    The deciding official considered the other relevant *Douglas* factors when determining that removal was the appropriate penalty, including the appellant's daily contacts with the public and staff members, his previous disciplinary history, the clarity of which he had notice that his conduct was unacceptable, his rehabilitation potential, and her loss of confidence in the appellant's ability to hold a supervisory position without posing a liability risk for the agency. IAF, Tab 11 at 27-28; HR (testimony of the deciding official). Weighing these factors against the relevant mitigating factors, she concluded that removal was the only option. IAF, Tab 7 at 28; HR (testimony of the deciding official).

¶25    We agree with the deciding official's assessment of the factors. The appellant had direct and daily interactions with numerous agency employees, as well as adult students at the agency facility, and thus, his repeated inappropriate

behavior with women is particularly concerning. *See Williams v. Department of the Army*, [102 M.S.P.R. 280](#), ¶ 9 (2006) (finding that the appellant's frequent contact with customers was an aggravating factor). Further, the appellant's prior disciplinary record establishes that he has a history of behaving inappropriately toward his female subordinates, as he was suspended for 13 days in 2008 for sending pornographic emails using his Government-issued computer to another female subordinate employee.[5] IAF, Tab 26 at 16-26.

¶26 The appellant was on notice that this type of behavior towards subordinate female employees constituted misconduct. His previous suspension served as a general warning that his conduct towards female subordinate employees was inappropriate. *Jinks v. Department of Veterans Affairs*, [106 M.S.P.R. 627](#), ¶ 25 (2007) (stating that prior discipline can be considered as notice that the appellant had been warned about the type of misconduct involved). Furthermore, in the months preceding the appellant's removal, his supervisor warned him "numerous times" that his comments and behavior were inappropriate. IAF, Tab 12 at 14; HR (testimony of the appellant's supervisor). The record contains evidence that the appellant was verbally counseled at least four times between January and March 2015 regarding his behavior towards his female subordinates. IAF, Tab 14 at 7-11. There is no doubt that the appellant had ample notice that his conduct was inappropriate and unacceptable.

¶27 The agency attempted to deter the appellant's behavior, practicing progressive discipline by issuing him a suspension and several verbal counselings before resorting to removal. Nevertheless, his behavior continued unabated. Evidence of multiple unheeded warnings weighs heavily in support of removal, because it demonstrates that the appellant cannot, or will not, correct his

---

[5] The appellant was also suspended in 2014 for 3 days after he failed to conduct initial or mid-year performance discussions with a female subordinate, and then forged the documents to falsely reflect that he had done so. IAF, Tab 14 at 13-18.

behavior, demonstrating that he lacks any rehabilitative potential. *See Fuqua v. Department of the Navy*, 31 M.S.P.R. 173, 178 (1986) (finding that the appellant's continuing misconduct, despite the agency's repeated attempts to improve his behavior through counselings, warnings, and prior disciplinary actions, served to establish the appellant's lack of rehabilitative potential). In this regard, we observe that an agency need not tolerate inappropriate conduct of a sexual nature until it becomes so pervasive and severe that it exposes the agency to liability under equal employment opportunity statutes. *See Lentine v. Department of the Treasury*, 94 M.S.P.R. 676, ¶ 13 (2003) (finding that an agency need not wait to discipline an employee until sexually offensive conduct becomes so pervasive and offensive that it constitutes unlawful discrimination under a hostile work environment theory).

¶28        The relevant mitigating factors that weigh in favor of the appellant include his nearly 20 years of service with the agency at the time of the misconduct at issue in this appeal, his prior military service, his successful performance and performance awards, and his claims of stress, tension with his supervisor, and diagnosis of depression.[6] HR (testimony of the appellant); IAF, Tab 11 at 27-28. We have considered these factors, but they simply do not outweigh the factors supporting removal in this matter. Therefore, we find that there is no basis to mitigate the appellant's removal. We reverse the administrative judge's findings to the contrary, and sustain the agency's removal action. ID at 20-21.

---

[6] The administrative judge credited the appellant's claim that stress and tensions in the workplace, as well as his diagnosis of depression, were mitigating factors, even though the appellant did not explain how they were related to his misconduct. ID at 21. While we have considered the appellant's claims, because the appellant failed to explain how stress from the workplace or his depression impacted his conduct at issue, we have not given the claims substantial weight. *See Roof v. Department of the Air Force*, 53 M.S.P.R. 653, 658 (1992) (finding that an administrative judge did not err in excluding evidence purporting to support mitigation, in part, because the appellant failed to establish a causal connection between the mitigating circumstance and the misconduct involved).

ORDER

This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.