**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DALE R. BORING,<br>            Appellant, | DOCKET NUMBER<br>SF-0752-21-0520-I-2 |
| v. | |
| SOCIAL SECURITY<br>    ADMINISTRATION,<br>            Agency. | DATE: April 22, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Dale R. Boring, Albany, Oregon, pro se.

Michelle M. Murray, Esquire, and Kate C. Brownlee, Esquire, Baltimore, Maryland, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 14-day suspension. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision with respect to the charges, AFFIRM the initial decision with respect to the appellant's affirmative defenses, and FIND that the agency proved

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

both of its charges and that removal is within the tolerable limits of reasonableness.

## BACKGROUND

The appellant is a GS-13 Criminal Investigator/Special Agent (SA) with the Social Security Administration's Office of Inspector General (OIG), in the Seattle Field Division of the Office of Investigations (OI). *Boring v. Social Security Administration*, MSPB Docket No. SF-0752-21-0520-I-1, Initial Appeal File (IAF), Tab 7 at 14. Within OIG, the OI conducts investigations related to allegations of fraud, waste, abuse, and mismanagement of programs and benefits administered by Social Security Administration (SSA). IAF, Tab 8 at 5. OIG maintains its own system of records to facilitate its investigations, separate from SSA databases. *Id*. SSA and OIG also entered into a memorandum of understanding dictating the limited circumstances in which OIG employees could access, use, and disclose information in SSA databases to outside law enforcement agencies.[2] IAF, Tab 14 at 13-17.

As relevant here, if an outside Federal, state, or local entity requests information contained within SSA records, and there is potential fraud against an SSA program or benefit, and OI has an interest in a potential investigation, then OI is supposed to open an investigative file on the matter. *Id*. at 53-54. However, if the requested information does not appear to involve any fraud against an SSA program or benefit, or OI has no interest in pursuing an investigation, then the information can be disclosed to the requesting agency only upon receipt of a Law Enforcement Verification Request (LEVER). *Id*. at 51-54. A LEVER has to be in writing and on official letterhead of the requesting agency, be signed by a sworn law enforcement official, and contain the name and social security number for review and a certification that the individual in question is suspected of misusing a social security number or committing another crime

---

[2] The memorandum of understanding is incorporated into the OIG Special Agent Handbook. IAF, Tab 14 at 48-54.

against a Social Security program. *Id*. at 50-52. A designated official within OI must approve the LEVER; only then can an OIG employee access SSA records and confirm whether the name and social security number matched. *Id*. at 52.

In September 2018, OIG conducted an office-wide audit of employee queries into SSA databases made between October 2017 and July 2018 and developed a list of such queries. IAF, Tab 8 at 35. The audit eliminated from the list any queries associated with LEVERs, open allegations, or case numbers. Hearing Transcript, dated Jan. 25, 2022 (HT 1), at 10-11 (testimony of the Assistant Special Agent in Charge in the Office of Quality Assurance and Professional Responsibility). For the queries that did not have an associated allegation, case number, or LEVER, OIG asked the individuals who conducted the query to provide a justification for the searches. *Id*. at 11-12 (testimony of the Assistant Special Agent in Charge in the Office of Quality Assurance and Professional Responsibility); IAF, Tab 10 at 59. The audit revealed that the appellant conducted 870 queries that did not correspond to an allegation or case number, and he was asked to provided justifications for a sample of those queries. IAF, Tab 8 at 35.

After reviewing the appellant's justifications for his queries, the acting OI Assistant Inspector General referred the appellant to the Office of Quality Assurance and Professional Responsibility (OQAPR) for potential systems access violations. *Id*. at 60. The resulting OQAPR investigation revealed that, between January 1 and November 20, 2018, the appellant conducted 352 SSA record queries for outside Federal, state, and local entities, none of which were associated with a LEVER, and 335 of which were not associated with any allegation or case number. *Id*. at 37-38. In his OQAPR interview, the appellant admitted that he accessed and disclosed information at the request of outside agencies in violation of OIG policies. IAF, Tab 10 at 19-25, Tab 22 at 6-7.

Effective July 23, 2021, the agency removed the appellant based on 106 specifications of unauthorized access of SSA records and 197 specifications

of unauthorized disclosure from SSA records. IAF, Tab 7 at 14-40. The appellant appealed his removal to the Board, IAF, Tab 1, and, after holding a hearing, the administrative judge mitigated the removal to a 14-day suspension, finding that the agency only proved 3 specifications of the second charge,[3] *Boring v. Social Security Administration*, MSPB Docket No. SF-0752-21-0520-I-2, Appeal File, Tab 2, Initial Decision (ID) at 24-46. The administrative judge ordered the agency to afford the appellant interim relief in accordance with 5 U.S.C. § 7701(b)(2). ID at 61.

The agency filed a petition for review, arguing, among other things, that the appellant's repeated admission to the charged misconduct was sufficient to sustain both of the agency's charges, and that the penalty of removal was within the tolerable limits of reasonableness. Petition for Review (PFR) File, Tab 1 at 6-25. The agency also attached to its petition for review a certificate of compliance with the interim relief order and supporting documentation. *Id*. at 26-32. The appellant filed a response to the agency's petition for review, PFR File, Tab 3, and a petition for enforcement challenging the agency's compliance with the interim relief order, PFR File, Tab 4 at 4-11. The agency replied to the appellant's response to the petition for review, and responded in opposition to the petition for enforcement. PFR File, Tabs 5-6. The appellant replied to the agency's response to his petition for enforcement. PFR File, Tab 7.

---

[3] Regarding the appellant's affirmative defenses, the administrative judge found that the appellant did not prove his claim of laches, finding that the 2½ years between the commencement of the appellant's investigative leave and his removal did not raise a presumption of prejudice, and there was no evidence that the appellant was hampered in his ability to defend himself by the passage of time. ID at 48-50. She also found that the appellant did not prove his claim of whistleblower retaliation because he did not prove he made a protected disclosure when he disclosed to the deciding official that he believed one of the investigators from OQAPR had an antagonism towards him. ID at 50-54. The appellant has not challenged either of these findings on review, and we discern no basis to disturb them. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency proved its charges by preponderant evidence.

As the agency argued, and the administrative judge acknowledged, the appellant admitted to the charged conduct throughout the removal process and the pendency of this appeal.  ID at 4, 17; PFR File, Tab 1 at 6-9.  Nevertheless, the administrative judge concluded that the agency's evidence did not support the majority of its specifications, sustaining only three specifications of the agency's second charge.  ID at 24-46.

It is well established that the agency may rely on an appellant's admission in support of its charge, and an appellant's admission to a charge can suffice as proof of the charge without additional proof from the agency.  *Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 9 (2014); *see Arena v. U.S. Postal Service*, 121 M.S.P.R. 125, ¶ 5 (2014) (finding that the appellant's stipulation to the first two specifications of a charge was sufficient to find that the agency proved its charge by preponderant evidence), *aff'd per curiam*, 617 F. App'x 996 (Fed. Cir. 2015); *see also Wells v. Department of Defense*, 53 M.S.P.R. 637, 643-44 (1992) (finding that the appellant's admission that he engaged in alleged conduct is sufficient proof to sustain the charge).  At no time in this matter has the appellant challenged or denied the charged misconduct.  In fact, the appellant has consistently and affirmatively stated that he knew he violated policy and has not challenged the agency's charges or specifications. IAF, Tab 16 at 25-26, 28-30, Tab 22 at 6-8, Hearing Transcript, dated Jan. 28, 2022 (HT 4), at 16-17 (testimony of the appellant).  In fact, at the hearing, when asked if he denied accessing and disclosing identified in the decision letter, the appellant responded, "I definitely do not now, nor have I ever."  HT 4 at 16-17 (testimony of the appellant).

Therefore, the appellant has repeatedly and expressly admitted to the misconduct.  IAF, Tab 16 at 25-26, 28-30, Tab 22 at 6-8, HT 4 at 16-17 (testimony of the appellant).  This alone is sufficient to sustain the agency's

charges. Accordingly, we reverse the administrative judge's finding that the agency only proved 3 specifications of the second charge and find that the agency proved all 303 of its specifications and both charges by preponderant evidence.

Removal was within the tolerable bounds of reasonableness.

Generally, in an adverse action appeal taken under chapter 75, the agency must prove its charge by preponderant evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty imposed was within the tolerable bounds of reasonableness. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 17. In this matter, we find that both of the agency's charges have been proven. The administrative judge determined that nexus existed, and neither party has challenged that finding on petition for review.[4] ID at 46-47. Therefore, we must now determine the propriety of the penalty.

When all of the agency's charges are sustained, as they are here, the Board will review the agency-imposed penalty only to determine if the agency considered all relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Thomas*, 2022 MSPB 35, ¶ 19. In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id*. The Board will modify or mitigate an agency-imposed penalty only when it finds that the agency failed to weigh the relevant factors, or the penalty clearly exceeds the bounds of reasonableness. *Id*.

The Board has articulated factors to be considered in determining the propriety of a penalty, such as the nature and seriousness of the offense and its relation to the employee's duties, the employee's past disciplinary record, the

---

[4] As the administrative judge noted, the nexus between the sustained misconduct and the efficiency of the Federal service is established when the misconduct occurred at work. *Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006).

supervisor's confidence in the employee's ability to perform his assigned duties, the consistency of the penalty with the agency's table of penalties, and the consistency of the penalty with those imposed on other employees for the same or similar offenses. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). It is well established that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employees' duties, position, and responsibilities. *Thomas*, 2022 MSPB 35, ¶ 20; *see Downey v. Department of Veterans Affairs*, 119 M.S.P.R. 302, ¶ 9 (2013).

We agree with the deciding official's assessment of the *Douglas* factors and find that the penalty of removal does not exceed the tolerable limits of reasonableness. IAF, Tab 7 at 33-37; HT 1 at 86-89 (testimony of the deciding official). The appellant's actions were repeated, intentional, and vast in scope. From January 1 through November 20, 2018, the appellant conducted 352 SSA database queries in violation of OIG policy. IAF, Tab 8 at 37-39. He did so despite annually acknowledging that he had read and understood OIG's systems access and disclosure policies, which set forth the narrow circumstances under which an OIG employee could access and disclose SSA information. *Id*. at 95-99; HT 4 at 7 (testimony of the appellant). Such policies specifically stated "**[d]o not** access SSA records and/or release any SSA information unless you are **absolutely certain** that you are legally authorized to do so," and set forth the minimum required administrative penalties for systems access offenses, including a warning that such offenses could lead to criminal penalties. IAF, Tab 14 at 48 (emphasis in original). Furthermore, the appellant received a 2-day suspension in 2013 for disclosing information from SSA records and tax return information to unauthorized persons. IAF, Tab 8 at 69-74. His previous suspension thus served as a warning that his conduct violated agency policy. *Jinks v. Department of Veterans Affairs*, 106 M.S.P.R. 627, ¶ 25 (2007) (stating

that prior discipline can be considered as notice that the appellant had been warned about the type of misconduct involved).

The appellant has repeatedly admitted to knowingly violating OIG policy and has expressed little remorse for his actions, claiming that OIG policies were "unable to be followed," and that it was "impossible" to do his job and remain within OIG's access and disclosure policies. HT 4 at 6-7, 65, 79-81 (testimony of the appellant). He further claimed that, although he agreed to abide by OIG policies, the Inspector General Act trumped the policies when they contradicted each other because, per the Inspector General Act, all of SSA's data is also OIG's data. *Id*. at 6-7, 73-74 (testimony of the appellant). The appellant also justified his actions by asserting that his queries were in furtherance of OIG's mission, and that any individual who used a name, date of birth, and social security number had a connection to the Social Security Act, and, therefore, could be subjected to an OIG investigation. *Id*. at 52-53 (testimony of the appellant).

Such testimony leaves us with the impression that the appellant not only has a blatant disregard for OIG's policies but will also continue to violate policies that he believes to be "unworkable." As the appellant is a law enforcement officer, we find this sentiment to be particularly troubling. It is well settled that the agency has a right to expect a higher standard of conduct from law enforcement officers because they are entrusted with a position of great trust and responsibility. *See Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 8 (2001) (stating that a higher standard of conduct and degree of trust are required of an incumbent of a position with law enforcement duties); *Fischer v. Department of the Treasury*, 69 M.S.P.R. 614, 619 (1996) (noting that law enforcement officials are held to a higher standard of conduct than other employees); *Hilderbrand v. Department of Justice*, 22 M.S.P.R. 233, 236 (1984) (same). The appellant's refusal to operate within the confines of OIG's policies is antithetical to his position as a law enforcement officer as he is tasked with upholding and enforcing the rule of law regardless of his opinion of the law.

*See Hilderbrand*, 22 M.S.P.R. 233, 236 (explaining that a law enforcement official has a general responsibility to uphold the law).

However, we acknowledge that the appellant has presented evidence that suggests that his actions may have been encouraged or condoned by the agency. For instance, the appellant's former Special Agent in Charge (SAC) emphasized that OIG should be an active and involved partner in Federal, state, and local law enforcement, and that OIG should be collaborating and sharing information with other agencies. HT 1 at 150-52, 157-62 (testimony of former OIG SAC). Also, the appellant, as a representative for the agency, was part of a Social Services Fraud Working Group, which was a group of fraud investigators from Federal, state, and local agencies that would meet periodically and share information regarding cases. Hearing Transcript, dated Jan. 27, 2022 (HT 3) at 94-103 (testimony of the appellant). In fact, many of the appellant's disclosures were made to members of this working group. *Id*. at 96 (testimony of the appellant).

Additionally, there is testimony from other SAs in the appellant's division echoing the appellant's sentiment that OIG's access and disclosure policies did not reflect the reality of working as a criminal investigator, that many SAs would work around official policy to perform their duties, and that the policies were not enforced prior to September 2018. HT 1 at 201-203, 206-11, 215 (testimony of former OIG SA T.S.); Hearing Transcript, dated Jan. 26, 2022 (HT 2) at 16-25 (testimony of former OIG SA S.W.), 112-21 (testimony of OIG SA D.S.); HT 3 at 5-10 (testimony of former OIG SA R.P.). However, when reviewing the testimony of the appellant's co-workers, it appears that they did not freely share information gathered from SSA records. HT 1 at 230-31 (testimony of former OIG SA T.S.); HT 2 at 35-37 (testimony of former OIG SA S.W.), 133-35 (testimony of OIG SA D.S.); HT 3 at 19-20 (testimony of former OIG SA R.P.). Instead, his co-workers seem to agree that, at the very least, the requested information needed to have some connection to a matter that OIG may be interested in for investigative purposes. HT 1 at 230-31 (testimony of former

OIG SA T.S.); HT 2 at 35-37 (testimony of former OIG SA S.W.), 133-35 (testimony of OIG SA D.S.); HT 3 at 19-20 (testimony of former OIG SA R.P.).

In contrast, the appellant believed that OIG should be focused on doing "the right thing," instead of "doing the thing right," and share whatever information it had with other law enforcement agencies because OIG was "in a unique position to be behind the scenes and helping our [law enforcement] partners find and stop" "monsters who steal and rape and kill and terrorize and torture." IAF, Tab 10 at 62. Therefore, the appellant freely accessed and disclosed information with other agencies, regardless of whether an SSA program or benefit was implicated. For instance, when an investigator with the Alaska Department of Revenue asked if the appellant could confirm the death of an individual, the appellant not only confirmed the death, but also provided personally identifiable information for the individual's wife, mother, children, and cousin. IAF, Tab 12 at 21-22. Similarly, when an Alaska State Trooper asked the appellant if he could provide a social security number of a homicide suspect, the appellant also provided the suspect's date of birth, the names of his father and mother, and confirmed that there were no SSA benefits attached to the individual, or record of employment. IAF, Tab 13 at 33.

Accordingly, even though there is evidence that other OIG SAs may have operated on the fringes of OIG's policies, the appellant seems to have operated entirely outside of the bounds of those policies. This is further supported by the fact that other OIG SAs were able to provide an accepted justification for their queries, even though they operated under the same policies as the appellant. HT 2 at 54, 58-59, 73-74 (testimony of former OIG SA S.W.), 136-37, 141 (testimony of OIG SA D.S.); HT 3 at 14-15 (testimony of former OIG SA R.P.). Therefore, while we remain unconvinced that the agency condoned the appellant's actions, to the extent that the agency did, we do not find this evidence sufficient to justify mitigation. *See Herrera-Martinez v. Social Security Administration*, 84 M.S.P.R. 426, ¶ 16 (1999) (noting that, although condonation may be a mitigating factor,

the Board has not always found that condonation warrants mitigation); *see also Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶¶ 18-19 (2010) (explaining that the Board considers condonation as a potential mitigating factor in the penalty analysis).

We considered the relevant factors that weigh in favor of the appellant, including almost 20 years of service with the agency at the time of the misconduct at issue in this appeal, his successful performance and performance awards, and the numerous letters and testimony in support of the appellant's abilities as a law enforcement officer. IAF, Tab 7 at 35, 137-64; *see generally* HT 1 146-195 (testimony of former OIG SAC), 196-244 (testimony of former OIG SA T.S.); HT 2 at 4-102 (testimony of former OIG SA S.W), 102-169 (testimony of OIG SA D.S.), 170-201 (testimony of Department of Homeland Security SA), 202-244 (testimony of former OIG Resident Agent in Charge); HT 3 at 3-28 (testimony of former OIG SA R.P), 33-52 (testimony of Alaska Department of Revenue Chief Investigator), 53-87 (testimony of Alaska Department of Revenue Investigator). While significant, these factors simply do not outweigh the evidence supporting removal. Therefore, we reverse the administrative judge's findings mitigating the action and sustain the agency's removal action.

The agency is in compliance with the administrative judge's interim relief order.

The agency's petition for review was accompanied by a certificate of compliance, as well as three Standard Form 50s reflecting the cancellation of the appellant's removal, the imposition of a 14-day suspension, and his return to duty at the end of the suspension, as well as a notice for the appellant to return to work following the initial decision.[5] PFR File, Tab 1 at 26-32. The return to work

---

[5] Although the interim relief order did not require the agency to cancel the removal action, the Board has found that, when an agency has in good faith inadvertently exceeded the requirements of an order for interim relief, it will not dismiss its petition for review. *Moscato v. Department of Education*, 72 M.S.P.R. 266, 270 (1996), *aff'd*, 155 F.3d 568 (Fed. Cir. 1998) (Table).

notice stated that, while the appellant would return as a criminal investigator, i.e., an 1811 series position, it would be unduly disruptive to return him to his previous duties due to "significant concerns" regarding the appellant's ability to follow agency policy and safeguard sensitive information. *Id*. at 31. Therefore, the agency placed the appellant in a remote position in the Administrative and Training Division and explained that, among other things, he would not be assigned enforcement or investigative work during the pendency of the agency's petition for review. *Id*. The appellant has filed a petition for enforcement challenging the agency's compliance certification, arguing that it did not provide him with status quo ante relief because the agency did not return him to his previous position and failed to restore the leave he had accrued at the time of his removal. PFR File, Tab 4 at 4-11.

The Board will not entertain a petition for enforcement of an interim relief order before a final decision is issued; therefore, we treat the appellant's petition as a motion to dismiss the agency's petition for review for failure to provide interim relief. *Johnson v. Department of Veterans Affairs*, 2023 MSPB 9, ¶ 7. When, as here, the appellant is the prevailing party in the initial decision and the administrative judge orders interim relief, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. *Id*., ¶ 6. If an agency makes a determination that returning an appellant to his previous position as interim relief would pose an undue disruption, it must nonetheless return the employee to a pay status pending the outcome of its petition for review, and provide "pay, compensation, and all other benefits as terms and conditions of employment." *Id.*, ¶ 7; 5 U.S.C. § 7701(b)(2)(B). The Board's review of interim relief is limited to determining whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay

and benefits—it cannot review the merits of the agency's undue disruptive determination. *Johnson*, 2023 MSPB 9, ¶ 7; *see King v. Jerome*, 42 F.3d 1371, 1375 (Fed. Cir. 1994).

Here, it is undisputed that the agency returned the appellant to a GS-13 Criminal Investigator/SA position and provided him with pay commensurate with that position but reassigned the appellant to a different division after making an undue disruption determination. PFR File, Tab 1 at 26-32. Such relief is consistent with the agency's interim relief requirements. *See Costin v. Department of Health & Human Services*, 72 M.S.P.R. 525, 533 (1996) (confirming that an agency may, as part of an undue disruption determination, detail, assign, and transfer an employee to a different duty location); *see also Nadolski v. Merit Systems Protection Board*, 105 F.3d 642, 645 (Fed. Cir. 1997) (explaining that the entitlement to interim relief under 5 U.S.C. § 7701(b)(2) does not prevent an agency from imposing additional terms or conditions on the employment, such as a change of station or change in duties). As for the appellant's arguments that the agency did not provide him with status quo ante relief, interim relief is not intended as a status quo ante remedy. *See Parbs v. U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 6 (2007), *aff'd*, 301 F. App'x. 923 (Fed. Cir. 2008). Such full relief is only appropriate after a final Board decision. Therefore, we find that the agency complied with the interim relief order.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. & 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.