**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MARCUS L. SWEARENGEN,<br>Appellant, | DOCKET NUMBER<br>DA-0752-20-0450-I-2 |
| v. | |
| DEPARTMENT OF THE ARMY,<br>Agency. | DATE: May 9, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daniel J. Gamino, Esquire, Oklahoma City, Oklahoma, for the appellant.

Quentin Sanders, Esquire, Fort Sill, Oklahoma, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained the agency's charges, affirmed the agency's removal action, and found that the appellant did not prove his affirmative defenses. For the reasons set forth below, we GRANT the appellant's petition for review. We REVERSE the initial decision with respect to the finding sustaining the agency's first charge and MODIFY the initial decision to mitigate the appellant's removal to a demotion to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the next lower-graded, non-supervisory, non-work leader position, with the least reduction in grade and pay. We otherwise AFFIRM the initial decision.

## BACKGROUND

The appellant was an Electronics Mechanic Leader, WL-10, in the agency's Radar Shop in Fort Sill, Oklahoma. *Swearengen v. Department of the Army*, MSPB Docket No. DA-0752-20-0450-I-1, Initial Appeal File (IAF), Tab 9 at 15. Although the Electronics Mechanic Leader is not a supervisory position, the appellant was in a position of authority, because he was responsible for relaying supervisory instructions to the subordinate employees and ensuring that they were complying with them. *Id*. at 17-18.

On June 23, 2020, the agency removed the appellant based on two charges. IAF, Tab 9 at 15, 44-47, Tab 91 at 5-7. The first charge, inappropriate remarks, was based on a single specification alleging that, on March 12, 2020, the appellant called S.B.,[2] a subordinate employee, "stupid," and that the appellant followed S.B. into the bay area, calling him "'stupid' repeatedly in a loud, elevated voice." IAF, Tab 91 at 5. The second charge, creating a disruption in the workplace, was also based on the events of March 12, 2020, alleging that the appellant created a disruption by repeatedly calling S.B. "stupid" and "continu[ing] to yell at [S.B.] in the bay area, [where] other employees heard [him] making a disruption." *Id*.

The appellant filed an appeal of his removal with the Board and, after holding a hearing, the administrative judge issued an initial decision sustaining both charges and the removal. *Swearengen v. Department of the Army*, MSPB Docket No. DA-0752-20-0450-I-2, Appeal File (I-2 AF), Tab 53, Initial Decision (ID). She credited the testimony of S.B., finding that the agency proved that the appellant repeatedly yelled at S.B. that he was "stupid," and that other employees heard him making "noticeable noise" and creating a disruption. ID at 14-19. The

---

[2] Because the subordinate employees have similar position titles, we identify them using initials.

administrative judge also found that the appellant failed to prove any of his affirmative defenses, to include claims of race discrimination, equal employment opportunity (EEO) retaliation, and hostile work environment based on race and prior EEO activity,[3] as well as his claims of due process violations and harmful procedural error. ID at 20-32. Finally, the administrative judge found that the agency established nexus, and that the selected penalty of removal was reasonable. ID at 32-35.

The appellant has filed a petition for review arguing, among other things, that the agency's evidence was insufficient to prove its charges, the administrative judge erred in failing to sanction the agency for repeated bad acts, and the agency violated 5 C.F.R. § 752.404 by selecting a deciding official who was not neutral.[4] Petition for Review (PFR) File, Tab 1 at 9-34. The agency has

---

[3] On review, the appellant does not challenge the administrative judge's findings that he failed to establish his Title VII claims. While we discern no basis to disturb her findings, we note that the administrative judge used the analytical framework set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 51 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25, in finding that the appellant failed to establish that either his race or prior EEO activity was a motivating factor in the agency's removal action. ID at 20-24. Following the issuance of the initial decision, the Board issued *Pridgen*, 2022 MSPB 31, ¶ 25, which overruled parts of *Savage*, and clarified the proper analytical framework to be applied to affirmative defenses of Title VII discrimination and retaliation. Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

[4] With his petition for review, the appellant attaches a copy of his supplemental motion to impose sanctions, PFR File, Tab 1 at 39-60, which is already contained in the record, IAF, Tab 36, as well as an email from the agency resending discovery documents, and an email from the appellant expressing discontent to the administrative judge regarding a statement she made regarding the parties' liability while ordering a mandatory settlement conference, PFR File, Tab 1 at 52-53, 55-56. The appellant has not shown that these documents were unavailable prior to the close of the record below, and has not explained the relevance of these documents to the dispositive issues in his appeal. Thus, they provide no basis to disturb the initial decision. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (explaining that the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision).

filed a response in opposition to the appellant's petition for review, and the appellant has filed a reply to the agency's response.  PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

Generally, in an adverse action appeal, an agency must prove its charge by a preponderance of the evidence, establish a nexus between the action and the efficiency of the service, and establish that the penalty it imposed is within the tolerable bounds of reasonableness.  *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 17.  Therefore, an agency must prove all of the elements of the substantive offense it charged against the appellant and a failure to do so will cause the Board to not sustain the charge.  *King v. Nazelrod*, 43 F.3d 663, 666 (Fed. Cir. 1994).  Furthermore, the Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices.  *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001); *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table).

We address the agency's first charge, inappropriate remarks, finding that the weight of the evidence does not establish that the appellant called S.B. "stupid."  Next, although the agency failed to prove that the appellant called S.B. "stupid," we nevertheless find that the agency proved its second charge, creating a disruption in the workplace, because supporting evidence establishes that the appellant and S.B. were engaged in a heated exchange that created noticeable noise that other employees heard.  We then find that the appellant failed to establish that the agency committed any error by selecting the deciding official. We further find that the appellant did not establish that the administrative judge committed an abuse of discretion by failing to sanction the agency.

Finally, we consider whether removal is within the tolerable bounds of reasonableness based on the single sustained charge of creating a disruption in the workplace.  As set forth in detail below, we do not find that removal is reasonable

in light of the circumstances, and thus, we mitigate the removal action to a demotion to the next lower-graded, non-supervisory, non-work leader position with the least reduction in grade and pay.

<u>The first specification cannot be sustained because the agency failed to prove that the appellant called S.B. "stupid."</u>

In sustaining the first charge, inappropriate remarks, the administrative judge credited the testimony of S.B., finding that the appellant called him "stupid," repeatedly and loudly. ID at 15, 18-19. On review, the appellant challenges the administrative judge's credibility determination, arguing that S.B. holds animosity towards him, and S.B. was the only individual who testified that the appellant called him stupid. PFR File, Tab 1 at 21-23. As discussed below, we agree with the appellant that the weight of the evidence does not establish that he called S.B. "stupid," and thus, the first charge cannot be sustained.

To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The Board must defer to an administrative judge's findings regarding credibility when, as here, they are based, either explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing, and the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2022). Specifically, the Board has found that it does not owe deference to an administrative judge's credibility

determinations when her findings are incomplete, inconsistent with the weight of the evidence, and do not reflect the record as a whole. *Thomas*, 2022 MSPB 35, ¶ 8.

After extensive review of the record, we find that there are sufficiently sound reasons to overturn the administrative judge's determination that S.B. was more credible than the appellant. The administrative judge stated that she found S.B. to be more credible than the appellant because his testimony was "more probable," and she "found no indication that [S.B.] harbored any malice toward the appellant. . . ." ID at 19. First, we do not find S.B.'s testimony to be more probable than the appellant's testimony denying that he called S.B. "stupid." April 28, 2021 Hearing Transcript (HT) at 41 (testimony of the appellant). As the appellant notes, S.B. was the only individual who alleged that the appellant called him "stupid." PFR File, Tab 1 at 21. No witness corroborated this claim, including the three individuals who S.B. initially named as witnesses to the incident. HT at 209-11 (testimony of the proposing official). The lack of witnesses is odd, especially given that S.B. testified that the appellant is "normally a very loud person" whose "voice does carry," and that during the March 12, 2020 incident, the appellant was yelling "pretty loud," so much so that his voice "echoed . . . inside the shop bay," where other employees were "scattered" about. *Id*. at 157, 159 (testimony of S.B.). Given this testimony, we find it to be highly improbable that, had the appellant yelled "stupid" loudly and repeatedly at S.B. as alleged, there is not one individual other than S.B. who could attest to that fact.

Next, although the administrative judge found that there was "no indication that [S.B.] harbored any malice towards the appellant," we find that there is significant evidence in the record to the contrary. ID at 19. First, it is undisputed that the appellant reported S.B. to management several times for various indiscretions, including tardiness and sleeping at work. HT at 33-34, 53-54 (testimony of the appellant), 165-67 (testimony of S.B.), 223-24 (testimony of the

proposing official). In fact, the appellant had taken pictures of S.B. sleeping at his desk, and provided them to management, behavior for which S.B. received written counseling. *Id*. at 33-34 (testimony of the appellant), 167, 171 (testimony of S.B.), 223-24 (testimony of the proposing official). Additionally, there is a documented history of tension between the appellant and S.B., involving several run-ins and heated exchanges throughout the years. *Id*. at 53-57 (testimony of the appellant), 169 (testimony of S.B.), 251-54 (testimony of A.J.). Even S.B. admitted that he was "not [the appellant's] biggest fan." *Id*. at 169 (testimony of S.B.). Finally, we note that S.B. now occupies the Electronics Mechanic Leader position, i.e., the appellant's former position. *Id*. at 181 (testimony of S.B.). Thus, S.B. had several reasons to be less than candid in his testimony regarding the appellant.

In conclusion, because only S.B. testified that the appellant called him "stupid," his testimony alone must be adequate to establish, by preponderant evidence, the misconduct alleged in the agency's first charge. For the reasons set forth above, we do not find S.B.'s testimony alone to be sufficiently persuasive to meet the preponderant evidence standard. Accordingly, we find that the agency failed to prove its first charge, inappropriate remarks.

The agency proved its second charge by preponderant evidence.

Because there is corroborating evidence establishing that S.B. and the appellant engaged in a loud exchange that "created noticeable noise" which was overheard by other employees, we agree with the administrative judge that the agency proved its second charge, creating a disruption in the workplace.[5]

---

[5] The narrative under the second charge included an allegation that the appellant "called [S.B.] 'stupid' repeatedly" on March 12, 2020. IAF, Tab 91 at 5. Although, in adjudicating the first charge, we have found that the agency failed to prove that the appellant called S.B. "stupid" on March 12, 2020, the creating a disruption in the workplace charge more broadly alleges that the appellant spoke in a "loud, elevated voice and continued to yell" at S.B., and that other employees heard the disruption as they exited the bay area. *Id*. For the reasons explained above, the agency established the essence of the charge, and the fact that it did not prove that the appellant used the term "stupid" while creating the disruption is not a basis upon which to find that the

ID at 18-19.  First, A.J., a Supply Clerk in the Radar Shop, testified that he was standing about 25 or 30 feet away when he heard "noise," which he later identified as the appellant and S.B. "hav[ing] words."  HT at 239, 258 (testimony of A.J.); IAF, Tab 9 at 21, 56.  He also testified that the incident was disruptive because it "hindered further operations going forward," and that people spent "probably about a good hour trying to figure out why and what caused [the incident]."  HT at 243-44 (testimony of A.J.).  Similarly, T.F., an Electronics Mechanic in the Radar Shop, confirmed in a written statement that he "heard some noise coming from the bay."  IAF, Tab 9 at 21, Tab 10 at 69.  Accordingly, we agree with the administrative judge and find that the agency proved its second charge by preponderant evidence.

To the extent that the appellant argues that there was no disruption to the workplace because no work was delayed or disrupted, his argument is unpersuasive.  PFR File, Tab 1 at 22-24, 29.  A loud exchange between two employees, which draws the attention of others away from their work, constitutes a disruption in the workplace.  As explained by A.J., the exchange "hindered further operations" because "any technician not performing their mission . . . hinders the instructors from instructing the students.  And it is paramount that [the workers] maintain the equipment and [their] operational status at all times."  HT at 243-44 (testimony of A.J.).  Thus, we find that the administrative judge correctly sustained the second charge.  ID at 19.

The appellant failed to establish that the agency's selection of the deciding official constituted harmful procedural error.

Under 5 U.S.C. § 7701(c)(2)(A), the Board cannot sustain an agency's decision if the employee "shows harmful error in the application of the agency's procedures in arriving at such decision."  *Stephen v. Department of the Air Force*,

_____

charge was not proven.  *See, e.g.*, *Hicks v. Department of the Treasury*, 62 M.S.P.R. 71, 74 (1994) (stating that an agency is required to prove only the essence of the charge and need not prove each factual specification supporting the charge), *aff'd*, 48 F.3d 1235 (Fed. Cir. 1995) (Table).

47 M.S.P.R. 672, 681 (1991). Reversal of an action for harmful error is warranted when the procedural error, whether regulatory or statutory, likely had a harmful effect upon the outcome of the case before the agency. *Id*. In order to prove harmful error under the statute and the Board's regulations, an appellant must "prove that any procedural errors substantially prejudiced his rights by possibly affecting the agency's decision." *Id*. (quoting *Cornelius v. Nutt*, 472 U.S. 648, 661 (1985)).

Here, the appellant alleges that the agency committed harmful error when it appointed a deciding official who had an existing negative opinion of him based on interactions that occurred prior to the issuance of the proposed removal.[6] PFR File, Tab 1 at 12-13, 30. We do not discern any evidence that the deciding official had any preconceived notions about the appellant, or ill feelings towards him based on events prior to the misconduct at issue. However, even assuming that the deciding official did harbor an uncomplimentary opinion of the appellant based on a previous interaction, the appellant has not established that any rule or regulation prohibits the agency from selecting a deciding official with an unfavorable opinion of an employee. *See Franco v. Department of Health and Human Services*, 32 M.S.P.R. 653, 658 (1987) (explaining that there is no general proscription of the appointment of a deciding official who is familiar with the facts of the case and has expressed a predisposition contrary to the appellant's interests), *aff'd*, 852 F.2d 1292 (Fed. Cir. 1988) (Table); *see also Teichmann v. Department of the Army*, 34 M.S.P.R. 447, 452 (1987) (finding no basis to vitiate an agency's proceedings when there was no evidence that any animus on the deciding official's part was a factor in his decision to remove the appellant), *aff'd*, 854 F.2d 1327 (Fed. Cir. 1988) (Table). Furthermore, the appellant has

---

[6] It appears that the prior interaction giving rise to the allegedly negative opinion was a March 3, 2020 meeting between the appellant and the deciding official, in which the deciding official notified the appellant of the results of an internal investigation into allegations of misconduct, discrimination, and a hostile work environment, which were made by the appellant. HT at 132-36 (testimony of the appellant); April 29, 2021 Hearing Transcript at 58-59, 69-74 (testimony of the deciding official).

produced no evidence that the selection of a deciding official who had no opinion of him prior to serving as the deciding official would have resulted in a different outcome. Thus, we agree with the administrative judge that there is no evidence that the agency committed harmful procedural error.[7] ID at 31-32.

<u>There is no evidence that the administrative judge abused her discretion.</u>

On review, the appellant argues that the administrative judge abused her discretion by, among other things, failing to sanction the agency for allegedly engaging in repeated bad acts. PFR File, Tab 1 at 10-19. The appellant alleges that, by denying his multiple requests for sanctions, the administrative judge "denied the [a]ppellant the effective assistance of counsel and forced the [a]ppellant to trial with very incomplete discovery responses. . . ."[8] *Id*. at 16.

An administrative judge has wide discretion to control the proceedings of an appeal. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010); 5 C.F.R. § 1201.41. In order to obtain a reversal of an initial decision based upon an abuse of discretion, the petitioning party must show that the resulting error affected the outcome of the case. *See Sanders*, 114 M.S.P.R. 487, ¶ 10; 5 C.F.R. § 1201.115(c). First, the appellant has presented no evidence that the administrative judge committed any error in her handling of the proceedings, as the appellant has not established that his motions should have been granted.

---

[7] To the extent that the appellant argues that the selection of the allegedly biased deciding official constitutes a due process violation, as found by the administrative judge, the appellant did not establish that his due process rights were violated, as he received notice of the charges, a meaningful opportunity to respond, and he has produced no evidence that the deciding official considered any ex parte communication. ID at 30-31; *see Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376 (Fed. Cir. 1999) (explaining that procedural due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers new and material information); *see also Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 6 (stating that minimum due process of law requires prior notice and a meaningful opportunity to respond).

[8] To the extent that the appellant argues that denial of discovery constituted a violation of his due process rights, PFR File, Tab 1 at 16-18, the appellant received minimum due process, as he received notice of the charges and a meaningful opportunity to respond, *see Pumphrey*, 122 M.S.P.R. 186, ¶ 6.

For instance, the appellant requested that the agency be sanctioned for failing to provide documents in response to his discovery requests before the administrative judge even ruled on his outstanding motions to compel. IAF, Tab 111. In total, the appellant filed at least six motions for sanctions, accusing the agency of engaging in a wide range of nefarious conduct, including, among other things, tampering with evidence and harassment, without sufficient evidence to support such strong accusations.[9] IAF, Tabs 127, 136; I-2 AF, Tabs 6-7, 9, 21. Thus, the appellant has not shown that his requests for sanctions were proper, or that the administrative judge erred in denying them.

Regardless of the propriety of the appellant's motions, the administrative judge addressed them thoroughly below. The record establishes that she addressed the parties' numerous motions in scheduled status conferences, memorialized her findings and rulings in written orders, and provided the parties with an explanation of her rulings and the opportunity to object. IAF, Tab 122; I-2 AF, Tab 35. While the appellant may not agree with the rulings, his disagreement alone is insufficient to justify a finding of abuse of discretion. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980) (explaining that mere disagreement with an administrative judge's rulings does not warrant review). Accordingly, there is no basis to disturb the initial decision on the grounds of abuse of discretion. *See Davis v. Department of Veterans Affairs*, 106 M.S.P.R. 654, ¶ 6 (2007) (stating that there is no basis to disturb an initial decision when the appellant's challenges to the administrative judge's procedural rulings were nothing more than mere disagreement).

---

[9] The appellant also filed two motions for a directed verdict, one alleging that the agency violated his due process rights because the deciding official should have been disqualified due to his adverse opinion of the appellant, I-2 AF, Tab 3, and the other requesting a directed verdict as a sanction for the agency's purported acts of "stonewalling," I-2 AF, Tab 7. As the administrative judge correctly found, the Board lacks the authority to grant a directed verdict. I-2 AF, Tab 35 at 2.

The appellant's removal is mitigated to a demotion.

As an initial matter, we concur with the administrative judge that, because the appellant's misconduct occurred on duty, nexus is established. ID at 32. Therefore, we consider the reasonableness of the agency's penalty in light of the one sustained charge.

When, as here, the Board does not sustain all of the charges, it will carefully consider whether the sustained misconduct merits the penalty imposed by the agency. *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 17 (2014). The Board may mitigate the penalty imposed by the agency to the maximum penalty that is reasonable in light of the sustained charges as long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges. *Id*. Here, the deciding official did not indicate that he desired a lesser penalty for fewer sustained charges. Instead, he testified that either charge alone would have been sufficient to justify a removal. April 29, 2021 Hearing Transcript (HT2) at 27 (testimony of deciding official). While the deciding official may believe that either charge alone supports removal, the Board must nevertheless determine the maximum reasonable penalty and, given the facts here, we do not believe removal is within the tolerable bounds of reasonableness. *See Boo*, 122 M.S.P.R. 100, ¶ 17.

The Board has held that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Thomas*, 2022 MSPB 35, ¶ 20. Here, we do not find the sustained misconduct to be of a sufficiently egregious nature to justify removal. The agency was only able to prove that the appellant engaged in a loud exchange with S.B., which created a disturbance in the workplace, because at least two employees heard some noise. IAF, Tab 10 at 69, Tab 91 at 5; HT at 239 (testimony of A.J.). However, while two witnesses confirmed that they heard

"noise," neither claimed to have heard the specifics of the exchange between the appellant and S.B., and thus, there is no indication in this record that the interaction was so loud that it was substantially disruptive. HT at 239 (testimony of A.J.); IAF, Tab 10 at 69. Furthermore, the exchange was short, and there is no evidence that it had a significant impact on the agency's operations. Additionally, we find that the appellant's tenure with the agency, which totaled approximately 6 years of service, as well as approximately 17 years of military service, is a considerable mitigating factor. *See Boo*, 122 M.S.P.R. 100, ¶ 21 (finding that, even though the appellant had only 1 year of service with the agency, his 22 years of service with a different agency and his lengthy military service was a considerable mitigating factor); HT at 10-11, 60 (testimony of the appellant).

Furthermore, we find that there are circumstances surrounding the offense that support mitigation. First, as previously stated, there is a history of tension between S.B. and the appellant. For instance, S.B. admitted to telling the appellant that "[t]he only person that had [the] right. . . to give [him] orders without question was [his] mother." HT at 164-65 (testimony of S.B.). Then, in a separate incident that occurred several years prior, S.B. allegedly threatened to "f-up" the appellant. *Id*. at 54-56 (testimony of the appellant), 252-53 (testimony of A.J.). Thus, there is some evidence that S.B. had a tendency to be confrontational and hostile towards the appellant, and it is likely that this contributed to the March 12, 2020 incident. Additionally, there is significant evidence that the appellant was in a difficult working environment, and he had previously admitted that the stress resulting from the agency's failure to address his concerns made him "extremely angry during and after work." IAF, Tab 17

at 46.[10] Accordingly, there are factors present, including unusual job tensions and personality problems, that weigh in favor of mitigation.

While we find that removal is beyond the maximum reasonable penalty, we recognize that the appellant is in a position of leadership and the sustained misconduct implicates the responsibilities inherent in that position. IAF, Tab 9 at 15-20. An essential function of his position is relaying instructions to subordinate employees and ensuring that the work is carried out according to those instructions. *Id*. at 17-18; HT2 at 17 (testimony of the deciding official). Therefore, it is of the utmost importance that the appellant be able to communicate with subordinate employees in an effective and respectful way, and that he refrain from behaving in a disruptive manner. HT2 at 17 (testimony of the deciding official). Neither the appellant's behavior here, nor his behavior in the past, which resulted in a 14-day suspension for discourteous or unprofessional behavior, inspires confidence that he has the capability to operate effectively in a leadership role. *Id*. at 18-19 (testimony of deciding official); IAF, Tab 9 at 52-53, Tab 19 at 24. Thus, we find that demotion to the next lower-graded, non-supervisory, non-work leader position with the least reduction in grade and pay is the maximum reasonable penalty.

---

[10] The appellant's former supervisor, who left the Radar Shop in 2019, admitted to making several offensive comments, including describing the shop's employees, who were all African American, as "from the ghetto," "on welfare," "didn't want much out of life," and "quite a drinker"; he also admitted to "maybe" using a racial epithet. HT2 at 94-97. The appellant filed several EEO complaints naming, among others, his former supervisor, which were ongoing at the time of his removal. IAF, Tab 18 at 5-9, Tab 34 at 5, Tab 37. He also sent numerous communications to the agency's upper management regarding his complaints about the working environment, leading to several internal investigations. IAF, Tab 9 at 63-102, Tab 10 at 5-39, Tab 29 at 22, Tab 55 at 16-18, Tab 71 at 5-8, Tab 77 at 5-9, 13; HT2 at 58-59, 69-74 (testimony of the deciding official). While we do not condone the actions of the former supervisor, or the environment tolerated by the agency, we nevertheless agree with the administrative judge that the appellant did not establish that this environment caused or justified his own behavior. ID at 29. Nevertheless, we consider these facts to be relevant in our mitigation analysis.

**ORDER**

We ORDER the agency to cancel the removal action and substitute a demotion to the next lower-graded, non-supervisory, non-work leader position with the least reduction in grade and pay, effective June 23, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation

necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.



| | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |
|---|---|

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

<u>Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:</u>

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.