**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SEAN W. CROOKS,<br>    Appellant, | DOCKET NUMBER<br>NY-0752-18-0112-I-3 |
| v. | |
| DEPARTMENT OF HOMELAND<br>    SECURITY,<br>    Agency. | DATE:  November 17, 2025 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Matthew Marks, Esquire, Long Island City, New York, for the appellant.

Deirdre Justina Payne, Esquire, and Jean Del Colliano, Esquire, New York, New York, for the agency.

Dalia M. Garcia, Miami, Florida, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 30-day suspension.  For the reasons discussed below, we GRANT the agency's petition for review.  We AFFIRM as MODIFIED the administrative judge's findings about proof of the agency's

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

charges. We VACATE the administrative judge's Uniformed Services Employment and Reemployment Rights Act of 1994 (codified as amended at 38 U.S.C. §§ 4301-4335) (USERRA) findings. We MODIFY the administrative judge's penalty analysis to find that removal is the appropriate penalty.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant filed the instant appeal in May 2018, challenging his removal from the position of Immigration Services Officer. *Crooks v. Department of Homeland Security*, MSPB Docket No. NY-0752-18-0112-I-1, Initial Appeal File (IAF), Tab 1. Due to the appellant's military training, and then his call to active duty, the administrative judge twice dismissed the appeal without prejudice. IAF, Tab 14; *Crooks v. Department of Homeland Security*, MSPB Docket No. NY-0752-18-0112-I-2, Appeal File, Tab 10. Following the appellant's return from military service, the appeal was reopened, in March 2021. *Crooks v. Department of Homeland Security*, MSPB Docket No. NY-0752-18-0112-I-3, Appeal File (I-3 AF), Tab 1. The administrative judge developed the record and held the requested hearing before issuing an initial decision that mitigated the appellant's removal to a 30-day suspension. I-3 AF, Tab 32, Initial Decision (ID).

The agency relied on two charges to remove the appellant—lack of candor and failure to follow agency policy. IAF, Tab 7 at 119-27. The lack of candor charge included nine specifications that the deciding official sustained, all of which concerned the appellant's responses on multiple electronic questionnaires for investigation processing (eQIP) forms and the appellant's responses to agency officials when questioned about the same. *Id.* at 30, 119-21. In short, the agency alleged that the appellant lacked candor in 2008, 2012, and 2013 eQIP forms, and then again when providing a sworn interview about the same, regarding questions about whether he had been charged with an offense involving alcohol and about whether he had been disciplined for misconduct while working for his previous

employer.  *Id.*  Meanwhile, the failure to follow agency policy charge included four specifications that the deciding official sustained.  *Id.* at 30, 122.  This charge alleged that, on 3 separate days involving four different lawful permanent residents of the United States, the appellant stamped their passports with non-secure black ink rather than the colored security ink required by agency policy, resulting in vast consequences for these travelers.  *Id.* at 122-25.  For example, one was arrested in the Dominican Republic, put in prison, and not able to return to the United States until a month after she was scheduled to do so, during which time she could not see her children, she lost her job, and she lost her apartment.  *Id.* at 125.

During the proceedings below, the administrative judge considered the lack of candor charge and found that the agency proved specifications 4, 5, 6, 7, and 9, but not specifications 1, 2, 3, or 8.  ID at 5-10.  Concerning the failure to follow agency policy charge, she found that the agency proved all the underlying specifications.  ID at 10-11.  However, the administrative judge also found that the agency violated USERRA by failing to adequately retrain the appellant during the period between his 4-month leave for military duty, between July 15 and December 1, 2014, and the period in which he failed to follow agency policy, in March 2015.  ID at 5, 11.  She then concluded that mitigation of the agency's penalty to a 30-day suspension was warranted.  ID at 11-12.

The agency has filed a petition for review.  *Crooks v. Department of Homeland Security*, MSPB Docket No. NY-0752-18-0112-I-3, Petition for Review (PFR) File, Tab 1.  The appellant has filed a response, and the agency has replied.  PFR File, Tabs 4-5.

<u>The agency proved specifications 1, 4, 5, 6, 7, and 9 of its lack of candor charge.</u>

As previously noted, the administrative judge sustained specifications 4, 5, 6, 7, and 9.  ID at 5-10.  On review, the agency argues that it also proved specifications 1, 2, 3, and 8.  PFR File, Tab 1 at 13-19.  We agree with respect to specification 1, but not the others, and we modify the initial decision accordingly.

It is undisputed that the appellant encountered a police officer in 2003, who issued him a court summons for violating a New York City code concerning open containers of alcohol in public. *E.g.*, IAF, Tab 9 at 126-29. The matter was ultimately dismissed. *Id.* Specifications 1, 2, and 3 of the agency's lack of candor charge concerned the appellant's "no" responses to questions within the appellant's 2013, 2012, and 2008 eQIP forms about whether he had ever been charged or convicted with an offense involving alcohol. *E.g.*, IAF, Tab 8 at 124, 182, Tab 9 at 108. The administrative judge did not sustain specification 3, concerning the 2008 eQIP response, because she deemed his answer of "no" to be a mistake, since the appellant had attached an explanation to the 2008 eQIP describing the incident and summons. ID at 6-7. For specifications 1 and 2, concerning the 2013 and 2012 eQIP responses, the administrative judge did not sustain the allegations because she found the question on the eQIP form (which had changed since the 2008 version) confusing. ID at 7.

On review, the agency argues that there was no evidence that the appellant was confused by the 2013 and 2012 eQIP questions. PFR File, Tab 1 at 13-15. We agree. We could find no indication that the appellant attributed his erroneous responses on the 2013 and 2012 forms to confusion about the question. *See, e.g.*, PFR File, Tab 4 at 15-18. We also disagree with the administrative judge's conclusion that the question at issue was, in fact, confusing. IAF, Tab 8 at 124, 182. Although the eQIP question changed between the 2008 form and the form used in the latter years, the question was consistently unambiguous.

That said, we find that the administrative judge's reason for not sustaining the specification for the 2008 form similarly applies to the specification for the 2012 form. While the appellant erroneously responded "no" to the question about alcohol-related charges or offenses, he noted the alcohol-related summons elsewhere with his 2008 and 2012 eQIPs. *E.g.*, IAF, Tab 8 at 176. The appellant did not do so while completing the 2013 eQIP. For that reason, we modify the administrative judge's findings regarding the lack of candor charge to find

specification 1 proven, concerning the 2013 eQIP response about alcohol-related charges or offenses.  To the extent that the agency has argued that we should also sustain specifications 2, 3, and 8, we are not persuaded.

The agency proved its failure to follow agency policy charge, and the appellant did not prove any associated USERRA violation.

As previously noted, the administrative judge found that the agency proved the failure to follow agency policy charge, but she also found that the agency violated USERRA by not retraining the appellant about the underlying policy upon his return from a 4-month period of military service.  ID at 10-11.  We disagree.

Because the appellant has acknowledged that he mistakenly used unsecure black ink, when he should have used secure colored ink, there appears to be no dispute that the agency proved the charge.  IAF, Tab 23 at 94-95.  The dispute is whether the appellant received training about this after his 4-month period of military service and whether such training was required.

In the initial decision, the administrative judge indicated that the appellant provided testimony that he was given some retraining upon his return from 4 months of military service but was not retrained on the specific agency policy at issue, i.e., to use colored security ink when stamping the passports of lawful permanent residents of the United States as they departed the country.  ID at 11. She also indicated that the deciding official testified that this was a basic requirement of the position that employees knew about.  *Id.*  However, the administrative judge then concluded, without further discussion or analysis, that the appellant should have been retrained about how to stamp these travelers' passports and that the agency's failure to do so amounted to a USERRA violation. *Id.*

An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the

authorities on which that reasoning rests. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). The administrative judge's USERRA analysis falls short of this standard.

Regarding this matter, the appellant testified, I-3 AF, Tab 23 at 67-117, as did the deciding official, *id.* at 17-66. The appellant indicated that he was generally aware of the requirement that he use colored security ink on the passports at issue and that he was repeatedly trained on the matter.[2] *Id.* at 89-90. The appellant also acknowledged that he received training after his 4-month stint of military service, but he asserted that this training did not touch on the proper ink to use when stamping the travelers' passports as he did.[3] *Id.* at 91-93. The appellant further implied that his mistake in using the wrong ink was attributable to an agency change from red security ink to blue security ink in the period leading up to his 4-month military leave. *Id.* at 90, 94-95. However, he acknowledged that the agency had never used black ink during his time with the agency, much less the nonsecure black ink he used on the travelers at issue. *Id.* at 109. When asked why he used the nonsecure black ink, the appellant stated that he was "unaware that blue ink was the ink that [he] needed to use" and all he had in his possession was the nonsecure black ink. *Id.* at 94-95.

The deciding official explained that the colored security ink is specially mixed so that it will fluoresce under a black or ultraviolet light, making counterfeiting more difficult. *Id.* at 42-43. He detailed the instances in which that colored security ink is used (secure public facing items), as compared to the nonsecure black ink (nonsecure documents). *Id.* The deciding official explained that the agency does periodically change the color of the security ink it uses, but

---

[2] Within his arguments, outside of the hearing, the appellant asserted that "he had received regular training on the use of secure ink" for the stamping at issue. I-3 AF, Tab 26 at 18.

[3] Both during and after the hearing, the appellant argued that he expected to be "retrained on everything" upon his return from 4 months of military service. IAF, Tab 23 at 112-13; I-3 AF, Tab 26 at 13.

it has always used the secure ink for the circumstances in which the appellant mistakenly used the nonsecure ink. *Id.* at 44. He indicated that when the agency changes colors, "they make it fool proof for people," by taking away the old colored security ink. *Id.* When asked how the appellant could have made the mistake of using nonsecure black ink, the deciding official expressed dismay. *Id.* at 44-45. He stated that he had never seen anything like this in his 40 years in the business. *Id.* at 47-48. The deciding official further testified that the appellant should have known that colored security ink needed to be used without retraining or reminding. *Id.* at 44-45, 48-49, 59-60. He analogized the situation to one in which a person does not drive a car for the first time in a handful of months and then asserts that they needed to be retrained to stop at a red light. *Id.* at 60. The deciding official's belief was that the use of colored security ink as opposed to nonsecure black ink was among the most basic matters that an individual in the appellant's position would have learned when he joined the agency in 2008 and would have consistently known during all the time since. The record includes brief but similar sentiments from other officials. *E.g.*, IAF, Tab 10 at 118, 192-94.

Under these circumstances, we find the deciding official's testimony credible and persuasive. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (discussing credibility factors to consider to resolve a disputed question). While the appellant has argued that he should not be held accountable for his failure to follow the policy of using colored secure ink on the passports at issue, because he was not explicitly retrained on the matter upon his return from 4 months of military service, the deciding official credibly testified that the use of colored security ink was among the most basic and fundamental tasks that the appellant would have known about since joining the agency many years earlier, regardless of his military service. The appellant has not presented credible evidence to the contrary. He has repeatedly pointed to the agency's changing of the security ink from red to blue, but he did not present credible testimony that

gives us reason to believe that this required additional training to avoid the improper use of nonsecure black ink and the vast consequences that followed.

In support of his argument that he should not be held accountable for his failure to follow agency policy, the appellant has pointed to USERRA's reemployment provisions. Specifically, he has pointed to provisions providing as follows for individuals returning after a period of service of more than 90 days: "the employee must be reemployed in the position in which he or she was employed on the date that the period of service began or in a position of like seniority, status, and pay. The employee must be qualified to perform the duties of this position. The employer must make reasonable efforts to help the employee become qualified to perform the duties of this position." PFR File, Tab 4 at 24; *see* 20 C.F.R. § 1002.197(b).[4] Here, the appellant was not reemployed in a different position following his 4 months of military service. He returned to the position he held before his military service. Under the circumstances, we are not persuaded that the appellant was unqualified for that position without additional training beyond that which he received. We therefore vacate the administrative judge's apparent conclusion to the contrary.

The agency proved that removal is a reasonable penalty.

Relying on just the lack of candor charge, the administrative judge deemed mitigation to a 30-day suspension appropriate. The administrative judge noted that the appellant had approximately 9 years of service, he had no prior discipline, and he was considered a satisfactory employee, having received some awards. ID at 11-12. She then concluded that mitigation of the removal to a

---

[4] In support of this legal theory for absolving him of discipline for the failure to follow agency policy, the appellant pointed us to just a single district court order, which ruled on motions for summary judgement, in part finding that there was a dispute of fact as to whether an employee of a private company was provided the training required by USERRA after her return from military service. I-3 AF, Tab 26 at 17-18; PFR File, Tab 4 at 24-26 (referencing *Achterberg v. Albaugh, LLC*, No. 5:16-CV-06097-DGK, 2017 WL 5163242, at *1 (W.D. Mo. Nov. 7, 2017)). The appellant has not directed us to any Board decision applying his legal theory, and we are aware of none.

30-day suspension was warranted. ID at 12. We find that these conclusory findings are incomplete. *See Spithaler*, 1 M.S.P.R. at 589. In any event, we must analyze the penalty anew in light of our findings above, regarding the failure to follow agency policy charge.

When the Board sustains all of an agency's charges, the Board may mitigate the agency's original penalty to the maximum reasonable penalty when it finds the agency's original penalty too severe. *Brough v. Department of Commerce*, 119 M.S.P.R. 118, ¶ 9 (2013). Notwithstanding that authority, the Board has long held that in a case like this, when all of the charges are sustained, even when some of the specifications are not, the agency's penalty determination is entitled to deference and should be reviewed only to determine if the agency considered all of the relevant factors and exercised its discretion within the tolerable limits of reasonableness. *Id.* In doing so, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.*

In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions. Those factors include: (1) the nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated; (2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position; (3) the employee's past disciplinary record; (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability; (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon

supervisors' confidence in the employee's ability to perform assigned duties; (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses; (7) consistency of the penalty with any applicable agency table of penalties; (8) the notoriety of the offense or its impact upon the reputation of the agency; (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense or had been warned about the conduct in question; (10) potential for the employee's rehabilitation; (11) mitigating circumstances surrounding the offense, such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

While rendering his decision, the deciding official discussed his consideration of the *Douglas* factors. IAF, Tab 7 at 30-33. Among other things, he described the appellant's misconduct to be very serious and frequently repeated. *Id.* at 31. He further described having lost all trust in the appellant. *Id.* Specific to the lack of candor charge, the deciding official noted that the appellant provided incorrect or incomplete information on the eQIP forms despite clear warnings within that this could lead to removal, then provided further incorrect or incomplete information about the same during an interview in which he swore or affirmed that he would be truthful. *Id.* at 32. Additionally, the deciding official expressed his concern that the appellant lacked rehabilitation potential, given his shifting of blame to the investigators and their questioning about his lack of candor. *Id.* Specific to the failure to follow agency policy charge, the deciding official noted that the appellant's use of the wrong ink on travelers' passports had vast consequences. *Id.* at 31. He further indicated that the appellant's actions adversely impacted trust in the agency for the affected travelers and that it required involvement of other agencies or components to remedy. *Id.* The deciding official also indicated that he was troubled by the

appellant shifting some of the blame to the travelers regarding the extent of the consequences they experienced due to his improper stamping of their passports. *Id.* at 32. In terms of mitigating factors, the deciding official acknowledged the appellant's many years of service with no prior discipline, his good performance ratings, his ability to get along with coworkers, and his claims of personal stressors at the time, involving his family and deployments. *Id.*

It is well established that the most important factor in assessing whether the agency's chosen penalty is within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 20. Lack of candor is a serious offense, which strikes at the heart of the employer-employee relationship. *Jackson v. Department of the Army*, 99 M.S.P.R. 604, ¶ 6 (2005). Here, the appellant's lack of candor on the eQIP forms was serious, in and of itself. Seemingly making matters much worse, though, was the appellant's subsequent lack of candor when providing sworn answers to questions about the same by investigators. *E.g.*, IAF, Tab 8 at 212-38. This lack of candor charge might, by itself, support the appellant's removal. Removal is all the more reasonable when that charge is paired with the appellant's failure to follow agency policy, which caused vast consequences to travelers. Under these circumstances, the agency met its burden regarding the penalty chosen.

**NOTICE OF APPEAL RIGHTS**[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3)** <u>**Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**</u>. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____

                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.